O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDY LANE,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>        Defendant. | Case No. EDCV 11-939 (OP)<br><br>MEMORANDUM OPINION AND ORDER |

The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (See Dkt. Nos. 8, 9.)

[2] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g). (ECF No. 6 at 3.)

# I.
# **DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues raised by Plaintiff as the grounds for reversal and/or remand are as follows:

(1) Whether the Administrative Law Judge ("ALJ") properly found Plaintiff capable of performing the jobs of Cashier II and Office Helper;

(2) Whether the ALJ properly developed the record and represented the record regarding Plaintiff's mental limitations;

(3) Whether the ALJ properly considered Plaintiff's residual functional capacity ("RFC"); and

(4) Whether the ALJ posed a complete hypothetical to the vocational expert ("VE").

(JS at 3.)

# II.
# **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one

rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

## III.
## DISCUSSION

**A.    The ALJ's Decision.**

The ALJ found that Plaintiff has the severe impairments of a 12.04(3) bipolar disorder; a history of methamphetamine and alcohol abuse, some of it quite recent; left carpal tunnel syndrome; and bilateral shoulder pain. (AR at 9-10.)

The ALJ found that considering Plaintiff's age, education, work experience, and RFC, based on all his impairments including the substance abuse disorder, there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Id. at 12.) The ALJ further found that if Plaintiff stopped the substance abuse, he would have the RFC to perform a wide range of light work except for no overhead reaching bilaterally; no unprotected heights; no commercial driving; and occasional gross and fine manipulation with the left hand. (Id. at 13.) He also noted that the limitations stated by the medical expert at the hearing "allowed for the normal social interaction of unskilled work so no limits were prescribed." (Id.)

The ALJ asked the VE whether there was any past work, which there was not, and assuming "light work generally, no overhead work bilaterally, no unprotected heights, no hazardous equipment, no commercial driving, occasional gross and fine manipulation with the left hand only," whether there were "[a]ny jobs available." (Id. at 36.) The ALJ then inquired whether adding "no more than moderate stress jobs" would affect the two jobs suggested by the VE. (Id.) Based on the testimony of the VE, the ALJ determined Plaintiff could perform the requirements of such work as Cashier II (Dictionary of Occupational Titles ("DOT") No. 211.462-010), or Office Helper (DOT No.

239.567-010). (AR at 15.)

### B. Whether the ALJ Properly Found Plaintiff Capable of Performing the Jobs of Cashier II or Office Helper.

After considering a hypothetical question based on an individual who could perform light work, with no overhead work bilaterally, no unprotected heights, no hazardous equipment, no commercial driving, and occasional gross and fine manipulation with the left hand only, the VE concluded that such an individual could perform the light, unskilled jobs of Cashier II, or Office Helper. (Id. at 36.) The ALJ ultimately adopted the conclusions of the VE as to Plaintiff's ability to perform these jobs. (Id. at 15.)

In its entirety, the examination of the VE by the ALJ was as follows:

Q     What's the past work?

A     There is no work in the last 15 years, Your Honor.

Q     Okay. Assume light work generally, no overhead work bilaterally, no unprotected heights, no hazardous equipment, no commercial driving, occasional gross and fine manipulation with the left hand only. Any jobs available?

A     Your Honor, there would be light, unskilled jobs such as with cashier II, light unskilled . . . locally, 9,200, nationally 920,000. There would be office helper, light, unskilled . . . 6,000 locally, 140,000 nationally.

Q     And if I add on moderate stress, no more than moderate stress jobs how would that effect those two?

A     They would still be appropriate, Your Honor.

(Id. at 36.)

Plaintiff contends that each of these two jobs as described by the DOT is inconsistent with Plaintiff's limitations as determined by the ALJ. (JS at 4.) Specifically, he contends that both jobs as defined by the DOT require frequent

4

reaching and fingering and that neither the VE nor the ALJ articulated reasons for deviating from the DOT. (Id. at 7.) The Court agrees in part.

The ALJ has an affirmative responsibility to ask whether a conflict exists between the testimony of a VE and the DOT. Soc. Sec. Ruling ("SSR") 00–4p, 2000 WL 1898704, at *4; Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007). If there is a conflict between the DOT and testimony from the VE, an ALJ may accept testimony from a VE that contradicts the DOT, but "the record must contain 'persuasive evidence to support the deviation.'" Pinto v. Massanari, 249 F.3d 840, 846 (9th Cir. 2001) (quoting Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)). The ALJ must resolve any conflict by determining whether the VE's explanation is reasonable and provides sufficient support to justify deviating from the DOT. SSR 00-4p, 2000 WL 1898704, at *4; Massachi, 486 F.3d at 1153. An ALJ's failure to do so can be harmless error when there is no conflict or the VE provides a basis for relying on her testimony rather than on the DOT. Massachi, 486 F.3d at 1154 n.19.

In this case, the ALJ did not question the VE as to whether her opinion deviated from the DOT. In fact, there is absolutely no discussion of the apparent conflict at the hearing. (AR at 36.) Instead, in his Decision the ALJ simply states in perfunctory fashion: "Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." (AR at 15.) This is not sufficient.

### 1. Gross and Fine Manipulation.

Although the ALJ identified Plaintiff's limitation regarding occasional fine and gross manipulations with Plaintiff's left hand, no such restrictions were identified with respect to the use of his right hand. There is nothing in the DOT that expressly states the jobs identified by the VE require fine or gross fingering with both hands. Nor, in the exceptionally limited testimony of the VE, did she give any indication that either occupation required frequent fine or

gross manipulation with both hands.³  See, e.g., Carey v. Apfel, 230 F.3d 131, 146 (5th Cir. 2000) (person with use of one arm could perform the jobs of cashier and ticket taker, even though jobs required fingering and handling abilities; DOT does not contain requirement of bilateral fingering and fingering); Diehl v. Barnhart, 357 F. Supp. 2d 804, 822 (E.D. Pa. 2005) (person with limited use of one arm could perform jobs requiring frequent reaching, handling, and fingering, and therefore there was no conflict between DOT and vocational expert's testimony to that effect); Feibusch v. Astrue, No. 07-00244 BMK, 2008 WL 583554, at *5 (D. Haw. Mar. 4, 2008) (citations omitted) ("[T]he use of two arms is not necessarily required for jobs that require reaching and handling."); McConnell v. Astrue, No. EDCV 08-667 JC, 2010 WL 1946728, at *7 (C.D. Cal. May 10, 2010).

Based on the foregoing, there is no apparent inconsistency between the VE opinion and the DOT descriptions of the jobs of Cashier II and Office Helper with respect to Plaintiff's ability to frequently perform gross and fine manipulation with the right hand or fingers, albeit only occasionally with the left hand. However, since as determined below the matter needs to be remanded for clarification of the apparent unexplained inconsistency between Plaintiff's lack of reaching ability and the jobs suggested by the VE, this issue should also be further clarified.⁴

**2.     Bilateral Reaching.**

As Plaintiff has pointed out, and Defendant has not refuted, the reaching requirement for the two positions suggested by the VE does not appear to be

---

³ As noted, the VE's testimony was remarkably limited.

⁴ It should also be determined whether Plaintiff's dominant hand is his right hand.

6

consistent with Plaintiff's reaching limitation as found by the ALJ.[5] According to the DOT, the jobs of Cashier II and Office Helper both require frequent reaching, meaning that such a condition exists from 1/3 to 2/3 of the time. DOT Nos. 2.11.462-010, 239.567-010. This appears to be in excess of the ALJ's limitation to "no overhead reaching bilaterally." (AR at 13.)

Moreover, although Defendant correctly states that an ALJ may rely on VE testimony that contradicts the DOT when evidence of record supports the deviation (JS at 8), Defendant fails to point the Court to any such evidence. (See, e.g., id. at 8-9.) Where, as here, the ALJ fails to ask the VE if her positions are consistent with the DOT, and there is no evidence to sufficiently explain the apparent deviation, the Court is unable to determine whether substantial evidence supports the ALJ's finding at Step Five.

Accordingly, remand is appropriate at Step Five of the sequential analysis. Massachi, 486 F.3d at 1154. On remand, the ALJ should determine (1) Plaintiff's dominant hand; (2) Whether the DOT requirements for the jobs recommended by the VE are consistent with Plaintiff's reaching and fingering limitations; and (3) Whether there is a reasonable explanation for any inconsistencies between the VE's testimony and the DOT.

**C.    Whether the ALJ Properly Developed the Record Regarding Plaintiff's Mental Limitations.**

The ALJ concluded, based on testimony of the medical expert, Dr. Craig Rath, that "the limitations of the medical expert allowed for the normal social interaction of unskilled work so no limits were prescribed." (AR at 13.)

Plaintiff contends the ALJ overlooked and failed to properly consider Dr.

---

[5] Defendant merely alleges in a conclusory fashion that Plaintiff's arguments regarding the reaching and fingering requirements for these jobs is "speculative." (JS at 8.)

7

Rath's entire testimony. (JS at 10.) He claims that Dr. Rath determined that even without considering Plaintiff's substance abuse, Plaintiff should be put in "no more than moderate stress situations," and that "in a high stress interpersonal situation he would probably blow up." (Id. (citing AR at 35-36).) He claims, therefore, that the ALJ's finding that the medical expert allowed for "normal social interaction of unskilled work," misrepresented the evidence in order to support the ALJ's decision, and failed to fully and fairly develop the record. (Id.)

At the hearing, Dr. Rath testified as follows:

Q   [BY ALJ] Limitations?

A   *His main limitation would be social terms, particularly authority figures.* He . . . has a short fuse with others as he says *so I would put him in no more than a moderate stress situation, from interaction with others including general public, supervisors and coworkers.* And that would really be the only limitation without the 12.09 [substance abuse].

. . . .

Q   [BY ATTORNEY] And you've just testified that he has difficulty dealing with people?

A   Yes.

Q   [BY ATTORNEY] Okay. Would that affect your assessment of the B . . . criteria at all?

. . . .

A   Yes, that's why I gave him a moderate in social functioning without the 12.09 [substance abuse] -- and that assumes he's out of the high stress situation. And a high stress interpersonal situation he'd blow up probably.

(Id. at 35-36 (emphasis added).)

1 | The Court has carefully reviewed this testimony and is unable to
2 | determine whether the ALJ's conclusion that Plaintiff retained the RFC "for
3 | normal social interaction of unskilled work," actually was "a reasonable
4 | interpretation of Dr. Rath's testimony" as argued by Defendant. (See JS at 14;
5 | AR at 35-36.) In fact, the italicized portions of the transcript above are
6 | virtually unintelligible to this Court, despite both Plaintiff's and Defendant's
7 | attempts to interpret the statements to support their respective positions.

8 | Dr. Rath's unintelligible, incomplete, or mistranscribed statements that
9 | "[Plaintiff's] main limitation would be *social terms*, particularly authority
10 | figures," and "I would put him in no more than a moderate stress situation,
11 | *from interaction with others including general public, supervisors and*
12 | *coworkers*" (AR at 35 (emphasis added)), make little or no sense and,
13 | depending on the Dr. Rath's actual meaning, could potentially significantly
14 | effect both the VE's testimony and the ALJ's findings. Although the ALJ
15 | asked the VE whether "add[ing] on . . . no more then [sic] moderate stress
16 | jobs," to his hypothetical would affect the VE's opinion, the Court finds this
17 | addition to be ambiguous at best. Dr. Rath's statement emphasized Plaintiff's
18 | problems interacting with "authority figures," exposure to "no more than
19 | moderate stress situation[s]" possibly related to the general public, supervisors,
20 | and coworkers, and avoidance of "high stress *interpersonal* situations" (id. at
21 | 36 (emphasis added)), all of which may be different from whether the job itself
22 | is of moderate or high stress. From the record, it cannot be determined how the
23 | VE interpreted the ALJ's short-hand hypothetical or whether the VE
24 | considered the limitation adding "no more than moderate stress jobs," to only
25 | encompass no more than moderate job-related stress alone, or whether the VE
26 | considered the limitation to encompass more than moderately stressful
27 | interactions with the general public, coworkers, and supervisors.

28 | Similarly, the ALJ also failed to explain how Dr. Rath's opinions that

9

1 Plaintiff should be in no more than a moderate stress situation, possibly relating
2 to interactions with the general public, supervisors, and coworkers, and that he
3 may "blow up" under "high stress interpersonal situations," are consistent with
4 the ALJ's conclusory statement that Dr. Rath's medical opinion allowed for the
5 "normal social interaction of unskilled work." (Id. at 13.) This is especially
6 true given the fact that the Cashier II job recommended by the VE, although
7 unskilled, requires "significant" interaction or dealing with people, a
8 requirement seemingly at odds with the ALJ's conclusory statement and
9 finding that such a job allows for "normal social interaction." See DOT No.
10 211.462-010.
11     On remand, the ALJ should obtain clarification from Dr. Rath regarding
12 the level and type of interaction, if any, he believed Plaintiff should have with
13 the general public, supervisors and coworkers. The ALJ should clarify what he
14 himself means by the "normal social interaction of unskilled work" and, if
15 appropriate, explain how Plaintiff's mental or interpersonal limitations, if any,
16 allow for this given the requirements of the jobs suggested by the VE.[6]
17 Through the testimony of a VE, the ALJ should also determine the effect, if
18 any, of Plaintiff's mental limitations, including any assessed limitations on
19 interactions with the general public, coworkers, and supervisors, on his ability
20 to perform the Cashier II or Office Helper jobs, and the degree, if any, to which
21 those limitations erode the job base.

22 **D.**     **Whether the ALJ Properly Considered Plaintiff's RFC.**
23     Plaintiff contends that the ALJ omitted from Plaintiff's RFC, any and all
24 mental limitations and impairments. (JS at 16.) As with the prior issue, he
25 contends the ALJ misstated Dr. Rath's opinion and found no limitation in

---

27     [6] This may require the testimony of the VE as to the "normal social
28 interaction" of the jobs suggested.

social interactions. (Id.) He contends the mental limitations stated by Dr. Rath would have significant vocational ramifications with respect to Plaintiff's having to deal with or interact with the general public, supervisors and coworkers, especially with respect to the jobs of Cashier II and Office Helper, both of which require dealing with people. (Id.)

For the reasons previously discussed, because Dr. Rath's opinion is unclear, and the ALJ's findings and hypothetical based on that opinion are also ambiguous and/or conclusory, on remand the ALJ should further clarify the effect, if any, of Plaintiff's mental limitations, including his ability to interact with the general public, coworkers, and supervisors, on his RFC.

**E.     Whether the ALJ Posed a Complete Hypothetical to the VE.**

"In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002) (quoting Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir. 1995)). Hypothetical questions posed to a VE need not include all alleged limitations, but rather only those limitations the ALJ finds to exist. See, e.g., Magallanes v. Bowen, 881 F.2d 747, 756-57 (9th Cir. 1989); Copeland v. Bowen, 861 F.2d 536, 540 (9th Cir. 1988); Martinez v. Heckler, 807 F.2d 771, 773-74 (9th Cir. 1986). As a result, an ALJ must propose a hypothetical that is based on medical assumptions, supported by substantial evidence in the record, that reflects the claimant's limitations. Osenbrock v. Apfel, 240 F.3d 1157, 1163-64 (9th Cir. 2001) (citing Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995)); see also Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995) (although the hypothetical may be based on evidence which is disputed, the assumptions in the hypothetical must be supported by the record).

Plaintiff contends that in the hypotheticals posed to the VE, the ALJ

failed to mention any of Plaintiff's significant mental limitations. (JS at 19.) He bases his argument primarily on his prior arguments regarding the ALJ's improper treatment of Dr. Rath's opinion, as well as on the consultative examiner's October 26, 2007, evaluation that diagnosed Plaintiff with bipolar disorder, NOS with depression, mild; mild mental difficulties in social functions; mild impairments in concentration, persistence, and pace; mild impairments in the ability to understand, carry out, and remember complex instructions; mild impairments in the ability to respond appropriately to usual work situations; and mild impairments in the ability to deal with changes in a routine work setting. (Id. at 19-20 (citing AR at 35-36, 280-87).) Plaintiff notes that although the ALJ found that Plaintiff had the severe impairment of a bipolar disorder, he failed to include this in the hypothetical to the VE. (Id. at 20.)

Whether the hypothetical question to the VE contained all of Plaintiff's limitations the ALJ found to exist is to some extent dependent upon the ALJ's clarifications and findings on remand as discussed above. Accordingly, on remand, the ALJ is directed to reconsider the limitations to be included within the hypothetical to the VE after clarifying the issues previously discussed herein. The hypothetical to the VE should clearly state the physical and mental limitations determined by the ALJ to exist, including any limitations on Plaintiff's ability to interact with the general public, coworkers, and supervisors.

**F.      This Case Should Be Remanded for Further Administrative Proceedings.**

The law is well established that remand for further proceedings is appropriate where additional proceedings could remedy defects in the Commissioner's decision. Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). Remand for payment of benefits is appropriate where no useful purpose

would be served by further administrative proceedings, <u>Kornock v. Harris</u>, 648 F.2d 525, 527 (9th Cir. 1980); where the record has been fully developed, <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits, <u>Bilby v. Schweiker</u>, 762 F.2d 716, 719 (9th Cir. 1985).

Here, the Court concludes that this is an instance where further administrative proceedings would serve a useful purpose and remedy administrative defects.

## IV.
## **ORDER**

Pursuant to sentence four of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED THAT Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this Memorandum Opinion.

DATED: January 11, 2012

HONORABLE OSWALD PARADA
United States Magistrate Judge